UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JUSTIN BAILEY,

                     Plaintiff,

     v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

                 Defendant.

NO:  12-CV-3119-TOR

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

      BEFORE THE COURT are the parties' cross motions for summary

judgment (ECF Nos. 15, 16).  Plaintiff is represented by D. James Tree.  Defendant

is represented by Nancy A. Mishalanie.  The Court has reviewed the administrative

record and the parties' completed briefing and is fully informed.  For the reasons

discussed below, the Court grants Plaintiff's motion and denies Defendant's

motion.

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.*, at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

activities on a sustained basis despite his or her limitations (20 C.F.R.

§ 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

work experience. *Id.* If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R.

§ 416.920(g)(1). If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above.

*Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If

the analysis proceeds to step five, the burden shifts to the Commissioner to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 5

establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## STATEMENT OF THE CASE

Plaintiff applied for supplemental security income (SSI) on May 26, 2009. Tr. 185-87, 197. His claims were denied initially and on reconsideration. Tr. 93-96, 97-98. Plaintiff filed a timely request for a hearing (Tr. 9) and a hearing was held before an administrative law judge ("ALJ") on October 14, 2010 (Tr. 42-54). Plaintiff did not appear, but his counsel did and a medical expert's testimony was taken. A consultative evaluation was recommended. Another hearing was conducted before the ALJ on May 10, 2011 by video-conference (Tr. 55-90). Plaintiff appeared and testified while represented by counsel. A medical expert (Dr. Walter Scott Mabee, a psychologist) and a vocational expert (Deborah Lapoint) also testified. The ALJ issued her decision on June 6, 2011, finding that Plaintiff was not disabled under the Act. Tr. 22-31. On August 2, 2012, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision that is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

Plaintiff, age 31 at the time of his application, has less than a ninth grade education and no GED. Tr. 84, 69-70. The ALJ determined, at step two, that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

Plaintiff had the following severe impairments: mood disorder, personality disorder, and polysubstance dependence.  Tr. 24.  The consultative evaluation resulted in Plaintiff being assessed Axis I diagnoses of polysubstance abuse; major depressive disorder, single episode, moderate; and anxiety disorder not otherwise specified; and Axis II diagnoses including personality disorder, not otherwise specified with schizoid, paranoid, and antisocial characteristics.  *Id*.  The medical expert, Dr. Mabee, testified that the record supported diagnoses of those severe impairments.  *Id*.  Dr. Mabee generically characterized Plaintiff's intermittent explosive disorder and antisocial personality disorder as a "personality disorder."  Tr. 25.  Indeed, the ALJ recognized Plaintiff's impairments were severe (as defined in the regulations) because they significantly interfere with the claimant's ability to perform basic work activities on a regular and continuous basis.  *Id*.

At step three, the ALJ determined Plaintiff did not meet the listings of impairments.  Tr. 25-27.  At step four, the ALJ found Plaintiff had the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, remember, and carry out simple, routine, repetitive tasks involving up to three-step commands. He can have no contact with the general public and only occasional and superficial contact with coworkers. He would work best if in an isolated setting with only occasional supervision, and dealing with things rather than people.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7

Tr. 27.  After receiving testimony from the vocational expert, at step four, the ALJ found Plaintiff was capable of performing his past relevant work as an industrial cleaner and a construction worker II.  Tr. 30.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income under Title XVI of the Social Security Act. Plaintiff has identified four issues for review (ECF No. 15 at 7):

1. Did the ALJ commit reversible by error omitting major parts of Dr. Mabee's opinions/testimony from her RFC even though she gave him full weight?

2. Did the ALJ commit reversible error by improperly rejecting Dr. Billings for three reasons, and using those same erroneous findings to discredit Mr. Bailey's credibility?

3. Did the ALJ commit reversible error by improperly rejecting Kathleen Schormann and Russell Anderson for the same three reasons she rejected Dr. Billing's evaluation and Mr. Bailey's credibility?

4. Did the ALJ commit reversible error by improperly rejecting/completely omitting Dr. Goldberg's opinions?

///

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8

# DISCUSSION

## A. The ALJ's Rejection of Dr. Mabee's and Dr. Billings' Opinions

A treating physician's opinions are entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).

In the event that an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). There is no evidence of malingering so the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing."

*Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, Dr. Mabee provided services as a medical expert, reviewing the records and expressing his opinion to the ALJ at the hearing.  Dr. Billings was an examining psychologist, performing a consultative evaluation, administering tests and expressing her opinion.  Tr. 321-30.

Dr. Mabee mistakenly thought Dr. Billings report showed a full scale IQ score of 64 and he opined that score was inconsistent with the record because 64 is in the mentally retarded range.  Tr. 62-63.  Dr. Billings report actually showed an IQ score of 74 and Dr. Billing's diagnosed borderline intellectual functioning.  Tr. 326.  Using the wrong score, Dr. Mabee interjected his "concern in terms of the validity of the testing."  Tr. 62.  This in turn reflected upon Plaintiff's credibility rather than being attributed to Dr. Mabee's mistake.  Tr. 28 (the ALJ commented, "so clearly there was a question as to whether the claimant was putting forth full effort during the testing.").  To compound the ALJ's error, she said the discussion would not have been different since there is likewise nothing whatsoever in this record to support a borderline intellectual function in this claimant other than the results of this one test, the validity of which is eroded by the invalidity of the other

tests.  Tr. 28 n. 1.   The ALJ said she recognized Dr. Mabee's mistake, gave

substantial weight to his determinations, and adopted his findings. Tr. 29.  While,

Dr. Mabee was mistaken concerning the IQ score, he also analyzed Dr. Billings

underlying diagnoses of borderline intellectual functioning, opining it was

consistent with the record:

> Immediate memory or general memory tended to be more in the
> borderline or low average range of functioning. That's true also for
> some of the measures from the Wechsler Adult Intelligence Scale,
> such as working memory and processing speed -- the more likely
> borderline intellectual function as opposed to clearly median mental
> retardation.

Tr. 63.  Thus, there was evidence of borderline intellectual functioning in the

record from both Dr. Mabee and Dr. Billings, which directly contradicted the

ALJ's findings.  *See* Tr. 330 ("argumentative individual who appears to function

within the borderline range for intellect"). The ALJ committed clear error in

rejecting Dr. Billings' test results attributed to a lack of Plaintiff's effort, when

they were in fact mistakenly read by Dr. Mabee.

Without any explanation whatsoever, Dr. Mabee and the ALJ declared

Plaintiff's MMPI-2 testing invalid.  Tr. 28.  This finding was also made despite Dr.

Billings' contradictory statement, "it is my opinion that the test results are a valid

indication of his current functioning."  Tr. 326.  Nor did the ALJ explain that the

MMPI-2 test was administered by means of a tape recorder because Plaintiff was

unable to read the questions, and even then Plaintiff was unable to comprehend the language in the MMPI-2, which is approximately at a sixth-grade level. Tr. 328.

Additionally, the ALJ claims Plaintiff did not mention to Dr. Billings that he was currently using marijuana. Tr. 28. The ALJ found this to "undermine the [Plaintiff's] credibility and the reliability of any of his self-reports to medical providers." *Id.* Substantial evidence does not support the ALJ's finding. There simply is no evidence in this record to deduce that Plaintiff intended to deceive Dr. Billings. Indeed, the documents furnished to Dr. Billings and recited in her written report clearly detailed the disclosure of the recent assessment of Plaintiff's "Cannabis Dependence." Tr. 322. Dr. Billings' report also recites a long history of alcohol and drug abuse and then declares, "He has also used marijuana." Tr. 325. Thus, there is no showing on this record that Dr. Billings further questioned Plaintiff about his current drug use, that he denied anything or that Plaintiff intended to deceive her.

**B. The ALJ's Rejection of Anderson's, Schormann's, and Goldberg's Assessments**

Social workers or counselors are not "acceptable medical sources" as that term is used in 20 C.R.R. § 404.1513(a), but are considered "other sources" under § 404.1513(d)(1). *See Turner v. Commissioner of Social Sec.,* 613 F.3d 1217, 1223-24 (9th Cir. 2010). Other sources are not entitled to the same deference. The

ALJ may discount testimony from these "other sources" if the ALJ gives reasons germane to each witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation and quotations omitted).

The ALJ rejected Russell Anderson's (M.S.W.) March 2009 DSHS evaluation of the Plaintiff and Kathleen Schormann's (M.A.) May 2009 mental health assessment, in part because their assessments were "based almost exclusively on the claimant's self-report of symptoms and limitations, which are not credible for the reasons discussed above." Tr. 29. As explained above, substantial evidence in the record does not support the ALJ's rejection of Plaintiff's credibility. Interestingly, these written assessments appear to have been provided to Dr. Billings and clearly show Plaintiff admitted to using marijuana since the age of "10-12 to current" and "for the past 3 days has smoked marijuana to control his rage," further eroding the reason the ALJ gave for rejecting Plaintiff's credibility.

Plaintiff contends it was error for the ALJ to ignore the report of Stephen Goldberg, Ph.D. Dr. Goldberg's report consists of a recommendation for DSHS benefits, containing conclusions but no analysis whatsoever. It was not error to ignore this unexplained single page recommendation.

///

///

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

## C. Prejudicial Error

The Commissioner contends that even if the ALJ committed error, Plaintiff has not shown it to be prejudicial. Plaintiff contends the ALJ failed to include all of Plaintiff's limitations in the hypothetical RFC assessment propounded to the vocational expert. Plaintiff reasons that if these limitations are included, as Plaintiff's counsel did during the questioning of the VE, Plaintiff would be found incapable of performing work and thus disabled.

Residual functional capacity is defined as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). In making an RFC assessment, the Commissioner is required to consider all of the claimant's impairments, including impairments that are not "severe" within the meaning of the regulations. 20 C.F.R. § 404.1545(a)(2). In this case, the ALJ assessed Plaintiff's RFC as follows:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, remember, and carry out simple, routine, repetitive tasks involving up to three-step commands. He can have no contact with the general public and only occasional and superficial contact with coworkers. He would work best if in an isolated setting with only occasional supervision, and dealing with things rather than people.

Tr. 27. However, the ALJ accepted Dr. Mabee's opinion that Plaintiff has "moderate limitations in the ability to understand, remember and carry out detailed instructions; and moderate limitations in the ability to maintain concentration,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

persistence and pace, which would affect attendance and cause moderate limitations in regularity of work behavior." Tr. 28. Additionally, the ALJ accepted Dr. Mabee's opinion that Plaintiff would "have moderate limitations in dealing with supervisors and coworkers," apparently conceding Plaintiff's anger and rage issues. *Id*. The ALJ rationalized that the above quoted RFC adequately incorporated these limitations in a "narrative fashion." *Id*. The Court has read ALJ's hypothetical questions to the VE and is convinced Dr. Mabee's expressed limitations were not communicated adequately to the VE. Tr. 84-85.

Irrespective, the ALJ neglected to incorporate Plaintiff's borderline intellectual functioning in the hypothetical. This was error.

### D. Remand

Pursuant to 42 U.S.C. § 405(g), "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Whether to remand for further proceedings or simply award benefits is within the discretion of the court. *See McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Generally, when the Court reverses an ALJ decision, "[t]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002). Remand for further administrative proceedings is appropriate when enhancement

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

of the record would be useful, and when additional administrative proceedings could remedy defects in the record. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *McAllister*, 888 F.2d at 603. However, the Ninth Circuit has held that remand for immediate payment of benefits is only appropriate if "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke*, 379 F.3d at 593.

The Court recognizes that this case was decided at step four, not step five. Plaintiff's counsel attempted to elicit a properly constructed hypothetical to the VE, obviously in an effort to resolve the case either directly or without the necessity of a remand. The Court remands the case to the Commissioner to complete steps four and five with a properly constructed RFC incorporating all of Plaintiff's limitations.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 15) is **GRANTED**.

2.  Defendant's Motion for Summary Judgment (ECF No. 14) is **DENIED**.

3.  Pursuant to sentence four of 42 U.S.C. § 405(g), this action is

    **REVERSED** and **REMANDED** to the Commissioner for further

    proceedings consistent with this Order. This Court retains jurisdiction.

4.  If and when appropriate, Plaintiff may file an application for attorney's
    fees and costs by separate motion.

The District Court Executive is hereby directed to file this Order, enter
Judgment for Plaintiff, provide copies to counsel, and **CLOSE** this file subject to
reopening when the Commissioner shall file with the Court any such additional or
modified findings of fact and decision.

**DATED** June 25, 2013.

THOMAS O. RICE
United States District Judge